So Ordered.

Signed this 19 day of October, 2026.

Patrick G. Radel
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

Nicole M. Alesandrini, Chapter 7
Case No. 24-10590-1-pgr

Debtor.

Jaime-Jo Creamer, Adv. Pro. No. 24-90022-1-pgr

Plaintiff,

v.

Nicole M. Alesandrini,

Defendant,

APPEARANCES:

Nicole M. Alesandrini Pro se
*Defendant*
497 Florida Road, Pattersonville, New York 12137

Warner & Warner, PLLC Jonathan D. Warner, Esq.
*Counsel for Plaintiff Jaime-Jo Creamer*
6 Automation Lane, Suite 109,Albany, New York 12205

**MEMORANDUM-DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This case involves a broken sibling bond and alleged breach of warranty. However, for the reasons set forth below, this Court finds that it does not involve a non-dischargeable debt arising from fraud under the applicable legal standards.

Presently pending are a Motion for Summary Judgment filed by Plaintiff Jaime-Jo Creamer (AP Docket No. 45) and Cross-Motion for Summary Judgment by Nicole M. Alesandrini, the Debtor/Defendant (AP Docket No. 62), which has been opposed by Plaintiff (AP Docket No. 67). The question presented is whether Plaintiff's fraud claim is a debt capable of being excepted from discharge in bankruptcy.

For the reasons provided below, this Court determines that Plaintiff failed to meet her burden of establishing that she is owed a debt arising from fraud and therefore denies her Motion. For the same reasons, this Court grants Defendant's Cross-Motion for Summary Judgment.

**JURISDICTION**

This Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C. §§ 1334(a), 1334(b), 157(a), and 157(b)(2)(A), (I), and (O). Venue is proper pursuant to 28 U.S.C. § 1409(a).

**BACKGROUND**

The following facts are undisputed.

Defendant was the owner of real property located at 19 Ridge Road, Rensselaer, New York 1144 (the "Rensselaer Property"). (AP Docket No. 45, ¶ 7; AP

Docket No. 62, at p. 4). Plaintiff is Defendant's younger sister. (AP Docket No. 45, ¶ 6).

On July 27, 2018, Defendant entered into a mortgage agreement with Citizens Bank (the "Citizens Mortgage"), wherein Citizens was granted a lien on the Rensselaer Property. (AP Docket No. 45, Ex. 3). The Citizens Mortgage was recorded with the Rensselaer County Clerk on August 15, 2018. (*Id.*).

On June 25, 2019, Defendant and Plaintiff entered into a sales agreement regarding the Rensselaer Property. (*Id.* at Ex. 2; *see also* AP Docket No. 62, at p. 4). As part of the agreement, Plaintiff executed a mortgage and promissory note (the "Private Mortgage") in the amount of $85,300.00 in favor of Defendant. (*Id.*). The Private Mortgage imposed a fixed twelve-month payment term of $710.83 per month, culminating with a balloon payment for the principal balance due. (*Id.*; *see also* AP Docket No. 62, pp. 11-17).

As consideration for the Private Mortgage, Defendant provided Plaintiff with a warranty deed containing lien covenants. (AP Docket No. 45, Ex. 2; AP Docket 62, pp. 4-7). More specifically, the deed provided, in pertinent part, that Plaintiff: (1) would enjoy the right to quiet enjoyment of the premises; and (2) that Defendant warrantied title to the premises. (*Id.*)

Sometime thereafter, a dispute between the parties arose concerning the Private Mortgage.[1]

[1] The precise cause of the dispute is unclear. Plaintiff alleges that the dispute arose when she attempted to obtain financing from a traditional lender to complete the balloon payment due under the Private Mortgage. (AP Docket No. 45, ¶ 23-24). More specifically, Plaintiff alleges she was unable to obtain third-party financing for the balloon payment due Defendant because of the Citizens Mortgage encumbering the property. *Id.* Plaintiff claims she then

## PROCEDURAL HISTORY

Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on May 27, 2024. (Docket No. 1, Case No. 24-10590-1). Plaintiff commenced this adversary proceeding on November 7, 2024, by filing a complaint seeking a determination that Defendant's unliquidated debt to Plaintiff is non-dischargeable under 11 U.S.C. §§ 523 (a)(2)(A) and/or 523 (a)(2)(B). (AP Docket No. 1).

Plaintiff moved for summary judgment on May 28, 2026, supported by exhibits. (AP Docket No. 45). Defendant moved to dismiss the Complaint on May 29, 2026. (AP Docket No. 47). This Court denied Defendant's Motion to Dismiss on July 9, 2026. (AP Docket No. 59) On July 29, 2026, Defendant filed a reply and cross-motion for summary judgment, supported by exhibits. (AP Docket No. 62). Plaintiff filed a response on August 6, 2026. (AP Docket No. 67).

This Court heard oral argument on September 8, 2026, in Albany, New York, and reserved decision.

## DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

asked Defendant to pay off the Private Mortgage and Citizens Mortgage. *Id.* Plaintiff further asserts that Defendant refused, thus leading Plaintiff to sue Defendant for fraud and unjust enrichment. *Id.* Neither party provided evidence to support these allegations or the existence of a lawsuit.

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d. Cir. 2011). The moving party must support its assertions by citing to evidence in the record, which may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). This requires "[s]omething more than a fanciful allegation . . . to justify denying a motion for summary judgment when the moving party has met its burden of demonstrating the absence of any genuine issue of material fact." *Contemp. Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981).

The court's task with respect to a motion for summary judgment is "carefully limited to discerning whether there are any genuine issues of material fact to be tried." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Accordingly, when determining whether summary judgment is proper, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d

305, 312 (2d Cir. 1997)). The court must also consider the burden of proof the moving party would face at trial. *Celotex Corp.*, 477 U.S. at 322–23.

This standard does not change where, as here, a court is faced with dueling motions for summary judgment. *See Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993). "Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). But "where the motion and cross motion seek a determination of the same issue, the Court may address both motions together." *See Manzolillo v. Nationstar Mortg., LLC*, 765 F. Supp. 3d 157, 164 (E.D.N.Y. 2025) (citation omitted).

In this case, Plaintiff asks this Court to except a debt from discharge under § 523(a)(2)(A) and § 523(a)(2)(B) (AP Docket Nos. 1 & 45). Underlying this request is an unliquidated debt stemming from a fraud claim. (AP Docket No. 45, ¶¶ 38-41). More specifically, Plaintiff alleges that Defendant fraudulently induced her into entering the Private Mortgage by misrepresenting Defendant's ability to convey clean title to the Rensselaer Property. (*Id.* at ¶ 38). Plaintiff argues that Defendant's fraudulent conduct involved: (1) failing to "openly and honestly" disclose the existence of the Citizens Mortgage; and (2) conveying a warranty deed with lien covenants notwithstanding the existence of the Citizens Mortgage. (*Id.* at ¶¶ 42, 53-54).

Defendant opposes Plaintiff's motion and asks this Court to grant summary judgment in her favor. (AP Docket No. 62).[2] As part of her opposition, Defendant

[2] It is customary for courts to afford *pro se* litigants leniency when reviewing their pleadings, motions, and briefs. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). This leniency is afforded to accommodate a *pro se*

denies making any false representations, engaging in false pretenses, or committing actual fraud. (*Id.*, at p. 1). Defendant asserts that Plaintiff bears the burden of proving all required elements of her claim. (*Id.*, at p. 2). Accordingly, Defendant argues that, based on the evidence provided, Plaintiff cannot establish a viable fraud claim. (*Id.*).

**B. Analysis**

This Court must decide whether Plaintiff's fraud claim is a debt capable of being excepted from discharge in bankruptcy under 11 U.S.C. §§ 523(a)(2)(A) and/or 523(a)(2)(B).

Section 523(a)(2) states: "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any ***debt*** . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud … [or] use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive" 11 U.S.C. § 523(a)(2) (emphasis added).

To establish a claim under § 523, Plaintiff must first show that she is owed a debt. The unliquidated debt Plaintiff alleges originates from a claim for fraudulent misrepresentation in connection with a real estate transaction.

---

litigants' inexperience and lack of familiarity with legal procedures or terminology. *Muniz v. Goord*, No. 9:04-CV-0479, 2007 WL 2027912, at *6 (N.D.N.Y. July 11, 2007).

### a. Fraudulent Misrepresentation under New York Law

Under New York law, a claim for fraudulent misrepresentation requires a plaintiff to allege: (1) "a misrepresentation or a material omission of fact which was false and known to be false by the defendant;" (2) the misrepresentation was "made for the purpose of inducing the other party to rely upon it;" (3) the other party justifiably relied upon the representation; and (4) the other party's reliance resulted in injury. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 178, 944 N.E.2d 1104, 1108 (2011) (citations omitted). A cause of action based upon allegations of fraud must set forth "sufficient detail to clearly inform a defendant with respect to the incidents complained of . . .." *Lanzi v. Brooks*, 43 N.Y.2d 778, 780, 373 N.E.2d 278, 279 (1977).

Where a fraud claim "is based on an omission . . . of material fact, the plaintiff" is required to allege "that the defendant had a duty to disclose material information and failed to do so." *City of Long Beach v. Agostisi*, 221 A.D.3d 776, 778, 200 N.Y.S.3d 390, 394 (2023) (citing *Schwatka v. Super Millwork, Inc.*, 106 A.D.3d 897, 900, 965 N.Y.S.2d 547; *High Tides, LLC v. DeMichele*, 88 A.D.3d 954, 957, 931 N.Y.S.2d 377)).

With respect to real estate transactions, "a claim of fraudulent misrepresentation must be analyzed within the doctrine of caveat emptor." *R. Vig Props., LLC v. Rahimzada*, 213 A.D.3d 871, 872, 184 N.Y.S.3d 782, 785 (2023). "Caveat emptor is one of the best-settled maxims of the law, and applies exclusively to a purchaser." *Simmons Creek Coal Co. Doran*, 142 U.S. 417, 437 (1892).

Under caveat emptor, a purchaser "must take care, and make due inquiries, or he may not be a bona fide purchaser." *Id.* This is because the purchaser "is bound not only by actual, but also by constructive notice, which is the same in its effect as actual notice." *Id.* In exercising proper diligence, the purchaser "must look to the title papers under which he buys, and is charged with notice of all facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him." *Id.*

"New York adheres to the doctrine of caveat emptor," and no liability will be imposed on a seller who fails to disclose information in an arm's length transaction. *Simone v. Homecheck Real Est. Servs., Inc.*, 42 A.D.3d 518, 520, 840 N.Y.S.2d 398, 400 (2007).

However, the general rule that a seller is not under a duty to disclose does not apply if: (1) there is evidence of some conduct on part of the seller which constitutes active concealment (*New Hackensack Realty, LLC v. Lawrence Dev. Realty, LLC*, 226 A.D.3d 799, 802, 210 N.Y.S.3d 129, 134 (2024) (citation omitted)); or (2) there is a confidential or fiduciary relationship between seller and buyer. *Slavin v. Hamm*, 210 A.D.2d 831, 832, 621 N.Y.S.2d 393, 395 (1994) (citation omitted).

In the context of a confidential or fiduciary relationship, the seller has a duty to disclose all known material facts essential to the transaction. *Id.* at 832; *see also Mobil Oil Corp. v. Joshi*, 202 A.D.2d 318, 318, 609 N.Y.S.2d 214, 215 (1994).

"'[M]ere kinship does not of itself establish a confidential relation.' . . . Rather, the existence of a confidential relationship must be determined independently of a

preexisting family relationship." *United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (citations omitted).

A familial relationship rises to the level of a confidential relationship when the plaintiff placed some special degree of trust or confidence in the relationship. *See Chasanoff v. Perlberg*, 19 A.D.3d 635, 636, 798 N.Y.S.2d 116 (N.Y. App. Div. 2005) (affirming a trial court's grant of summary judgment in favor of the defendant because the defendant established that the plaintiff, his sister, did not place any special trust in their relationship).

Here, Plaintiff failed to establish that Defendant was under a duty to disclose the Citizens Mortgage. Nowhere in the Motion or Response does Plaintiff provide evidence supporting the premise that Debtor took any steps to actively conceal the existence of the Citizens Mortgage. To the contrary, evidence provided by both parties illustrates that the Citizens Mortgage was duly recorded and capable of being uncovered by a title search.[3] *See Slavin*, 210 A.D.2d at 832 (upholding trial court's grant of summary judgment in favor of the defendant because the easement encumbering the property was "readily ascertainable by examination of the abstract title" and, thus, no duty to disclose existed).

Furthermore, Plaintiff fails to establish a confidential relationship between her and Defendant, as that term is defined under applicable non-bankruptcy law.

[3] A duly recorded mortgage is deemed to put subsequent purchasers on notice of the mortgagee's interest. *See Doyle v. Lazarro*, 33 A.D.2d 142, 144, 306 N.Y.S.2d 268, 270 (1970), *aff'd*, 33 N.Y.2d 981, 309 N.E.2d 138 (1974) ("The recording acts reflect a legislative presumption that a recorded deed constitutes notice to a subsequent purchaser."). Importantly, "[i]t matters not whether [a subsequent purchaser] checks the records but does not find the deed or neglects to check the records—he is unprotected in either case." *Id.*

It is undisputed that the parties share a sibling relationship. (ECF No. 45, ¶ 6). However, as noted above, the parties' kinship alone is insufficient to demonstrate a confidential relationship. *Chasanoff*, 19 A.D.3d at 636; *Chestman*, 947 F.2d at 568.

Plaintiff claims a confidential relationship exists because she reasonably relied on Defendant's assistance for the past twenty-seven years. (AP Docket No. 45, ¶ 12). As Defendant acknowledges, this assistance included: (1) letting Plaintiff's family move into her home; (2) co-signing on one of Plaintiff's loans; (3) putting Plaintiff on her cell-phone plan; and (4) uprooting her own family to allow Plaintiff to reside in her fully furnished home. (AP Docket No. 5, at pp. 1-2).

These factors are not sufficient to establish a confidential relationship as that concept is defined under New York law.

"A confidential relationship is one that is 'of such a character as to render it certain that [the parties] do not deal on terms of equality'" *Bonczyk v. Williams*, 119 A.D.3d 1124, 1125, 990 N.Y.S.2d 304 (2014) (quoting *Gordon v. Bialystoker Ctr. & Bikur Cholim, Inc.*, 45 N.Y.2d 692, 698–99, 385 N.E.2d 285 (1978)). Such inequality can be derived from a party's "superior knowledge of the matter, or from an overmastering influence" or based upon another's "weakness, dependence, or trust justifiably reposed on the stronger party." *Id.* at 1125-26. However, New York law requires overwhelming evidence of inequality to establish a confidential relationship. *See Bonczyk*, 119 A.D.3d at 1126-27.

For example, in *Bonczyk*, the Court found that there was insufficient evidence to support a finding of a confidential relationship between a mother and her child

even though testimony showed that the mother: (1) suffered an injury from a fall; (2) had her condition worsen leading to severe medical complications; (3) relied upon her daughter to feed, bathe, and provide her with her medications; and (4) had her daughter act as her attorney-in-fact by paying her bills and managing her financial affairs while she experienced cognitive decline. *Bonczyk*, 119 A.D.3d at 1126. The court reasoned that such evidence "does not establish that [the mother] lacked capacity to make decisions." *Id.* at 1127. Absent additional evidence that the child was "controlling [the mother's] financial decisions," her health status and complete dependence on her child did not establish a confidential relationship. *Id.*

In this case, Plaintiff has produced undisputed evidence establishing that Plaintiff relied on Defendant's assistance for twenty-seven years. (AP Docket No. 45, ¶ 12). During this duration, Defendant's assistance entailed providing Plaintiff with financial support and giving her family a place to live. (*See* AP Docket No. 5, at pp. 1-2).

However, like the mother in *Bonczyk*, Plaintiff fails to establish that Defendant exercised control over her financial decisions. To the contrary, the undisputed facts demonstrate that Plaintiff was capable, and did in fact, make her own financial decisions by electing to purchase the Rensselaer Property. (AP Docket. No. 45, Ex. 2).

Furthermore, even though it is undisputed that Plaintiff relied on Defendant's assistance for twenty-seven years, this alone is insufficient to establish a confidential relationship without evidence showing Plaintiff lacked capacity to act independently.

*See Bonczyk*, 119 A.D.3d at 1127 (stating that complete dependence does not establish a confidential relationship, absent a showing of incapacity).

Plaintiff also fails to establish the existence of a fiduciary relationship. Fiduciary relationships are "[f]ounded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Braddock v. Braddock*, 60 A.D.3d 84, 88–89, 871 N.Y.S.2d 68, 72 (2009) (citation omitted). A family relationship between the parties, while relevant, "is 'not determinative' of whether there is a fiduciary relationship between those parties." *Uddo v. DeLuca*, 425 F. Supp. 3d 138, 155-56 (E.D.N.Y. 2019), *aff'd*, 837 F. App'x 39 (2d Cir. 2020) (concluding that a fiduciary relationship between the parties existed because, in addition to being family, one party held themselves out as an expert in the field); *see also Chestman*, 947 F.2d at 558.

Beyond the parties' familial relationship, Plaintiff fails to provide evidence establishing a fiduciary relationship with Defendant. More specifically, there is no evidence establishing that Defendant held herself out as an expert with respect to real estate transactions. *See Uddo*, 425 F. Supp. 3d at 155-56. Nor is there any evidence establishing that Plaintiff and Defendant were involved in a joint venture, business venture, co-ownership in an enterprise, or any other independent circumstances giving rise to a fiduciary relationship. *See Quadrozzi v. Est. of Quadrozzi*, 99 A.D.3d 688, 692, 952 N.Y.S.2d 74 (2012) ("As relatives sharing a business relationship over several decades, [the parties] shared a confidential relationship."); *Genger v. Genger*, 121 A.D.3d 270, 271, 990 N.Y.S.2d 498 (2014)

("[F]amily members stand in a fiduciary relationship toward one another in a co-owned business venture . . ."); *Braddock v. Braddock*, 60 A.D.3d 84, 88, 871 N.Y.S.2d 68, 72 (2009) ("Family members stand in a fiduciary relationship toward one another in a co-owned business venture.").

Finally, Plaintiff argues that Defendant fraudulently misrepresented the quality of title to the Rensselaer Property by conveying to her a warranty deed with lien covenants. (AP Docket No. 45, ¶¶ 11-16). However, this argument is insufficient to establish fraud in a real estate transaction. In other words, while Plaintiff might plausibly allege a breach of warranty against Defendant, she cannot sustain a claim arising from fraud, which is necessary to exempt the claim from discharge in bankruptcy.

As discussed above, New York adheres to the doctrine of caveat emptor. *See R. Vig Props., LLC*, 213 A.D.3d at 872, 184 N.Y.S.3d at 785. To maintain a fraud claim in this context, the plaintiff must provide evidence of active concealment on part of the seller. *See Jablonski v. Rapalje*, 14 A.D.3d 484, 485, 788 N.Y.S.2d 158, 160–61 (2005). More specifically, this requires the plaintiff to show "that the seller or the seller's agents thwarted the plaintiff's efforts to fulfill [her] responsibilities fixed by the doctrine of caveat emptor." *Jablonski v. Rapalje*, 14 A.D.3d 484, 485, 788 N.Y.S.2d 158, 160–61 (2005).

In this case, Defendant's conveyance of a warranty deed containing lien covenants did not absolve Plaintiff of her duty to take "due care and to make due inquiries" to determine the status of title. *See Simmons Creek Coal Co. v. Doran*, 142

U.S. 417, 437 (1892). Accordingly, Plaintiff's reliance on the warranty deed containing lien covenants—without any evidence that Defendant impeded her efforts to uncover the Citizens Mortgage—fails to establish the active concealment necessary to support a fraud claim. *Jablonski*, 14 A.D.3d at 485.

With respect to Defendant's Cross-Motion, Defendant denies Plaintiff's allegations and argues that Plaintiff cannot establish the elements of fraud. (AP Docket No. 61, at p. 2). Based on the evidence provided, the parties do not dispute that Defendant entered into the Citizens Mortgage, which was recorded on August 15, 2018. (AP Docket No. 45, Ex. 3; AP Docket No. 62, at p. 8). Nor do the parties dispute that Plaintiff and Defendant entered the Private Mortgage on June 25, 2019. (AP Docket No. 45, Ex. 2; AP Docket No. 62, at pp. 4-7). And finally, the parties also do not dispute their status as siblings. (AP Docket No. 45, ¶ 6).

As noted above, to establish fraud in the context of a real estate transaction, the evidence must establish either: (1) Defendant's active concealment of the Citizens Mortgage; or (2) a confidential or fiduciary relationship between Defendant and Plaintiff. *See New Hackensack Realty, LLC*, 226 A.D.3d at 802; *Slavin*, 210 A.D.2d at 832 (citation omitted).

The evidence provided in support of both Motions establishes that Defendant did not actively conceal the Citizens Mortgage. Rather, the Citizens Mortgage was recorded *almost a year prior* to the Private Mortgage. *See Doyle v. Lazarro*, 33 A.D.2d 142, 144, 306 N.Y.S.2d 268, 270 (1970), *aff'd*, 33 N.Y.2d 981, 309 N.E.2d 138 (1974) ("[A] recorded deed constitutes notice to a subsequent purchaser.").

Furthermore, even given the existence of a sibling relationship between Defendant and Plaintiff, this relationship is insufficient, without more, to impose on Defendant a duty to affirmatively disclose the Citizens Mortgage. *Chasanoff*, 19 A.D.3d at 636; *Chestman*, 947 F.2d at 568. Therefore, Defendant has carried her burden by establishing that Plaintiff cannot maintain a viable fraud claim and thus is not owed a "debt" under § 523.

**Conclusion**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (AP Docket No. 45) is DENIED; and Defendant's Cross-Motion for Summary Judgment (AP Docket No. 62) is GRANTED and Defendant is determined to not owe Plaintiff a debt under § 523(a)(2) in connection with the unliquidated fraud claim.

###